AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>DEVICE 1 - One gray and black Apple iPhone Model<br>A1634, FCC ID: BCG-E2944A, seized from the person of<br>MARIO CEBALLOS | )<br>)<br>)<br>)<br>)<br>)    Case No. **19-1620-M-1** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the    Eastern    District of    Pennsylvania   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Ann Kirkland (FBI)

*Printed name and title*

Sworn to before me and signed in my presence.

Date:    September 24, 2019

*Judge's signature*

City and state: Philadelphia, Pennsylvania    Hon. Jacob P. Hart, U.S. Magistrate Judge

*Printed name and title*

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>DEVICE 2 - One tan Apple iPhone, with no further<br>identifying information, seized from the bedroom of LUIS<br>GOMEZ at 402 Spring Valley Road, Reading, PA | ) ) ) ) ) ) | Case No.   19-1620-M-2 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
   See Attachment A.

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:
   See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

   ☑ evidence of a crime;

   ☑ contraband, fruits of crime, or other items illegally possessed;

   ☑ property designed for use, intended for use, or used in committing a crime;

   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

   ☐ Continued on the attached sheet.

   ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
      under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   _____September 24, 2019_____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>DEVICE 3 - One Mac book laptop computer, serial number: )<br>C02GHRQ6DV13, seized from the bedroom of LUIS )<br>GOMEZ at 402 Spring Valley Road, Reading, PA ) | Case No. 19-1620-M-3 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ September 24, 2019 _____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   19-1620-M-4
DEVICE 4 - One black and blue cellular telephone Model )
QS5509A, IMEI: 357485092790080, seized from common )
area in 402 Spring Valley Road, Reading, PA )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Ann Kirkland (FBI)

*Printed name and title*

Sworn to before me and signed in my presence.

Date:   September 24, 2019

*Judge's signature*

City and state: Philadelphia, Pennsylvania         Hon. Jacob P. Hart, U.S. Magistrate Judge

*Printed name and title*

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| DEVICE 5 - White Apple iPhone, with no further identifying information, seized from the common area in 402 Spring Valley Road, Reading, PA | ) ) ) |

Case No.    19-1620-M-5

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
  See Attachment A.

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized):*
  See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
  under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    September 24, 2019

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>DEVICE 6 - One gray Apple iPhone Model A1586, IMEI:<br>353026095897953, seized from the common area in 402<br>Spring Valley Road, Reading, PA | )<br>)<br>)<br>)<br>)<br>) |

Case No. 19-1620-M-6

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____September 24, 2019____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
DEVICE 7 - One black Samsung flip phone Model SGH- )
T309, serial number: RV3YB17687H, IMEI: )
357835001165222 in 402 Spring Valley Road, Reading, PA )

Case No.  19-1620-M-7

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____Eastern_____ District of _____Pennsylvania_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____September 24, 2019_____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| DEVICE 8 - One black Apple iPhone, with no further identifying information, seized from the bedroom of Jose Gomez in 402 Spring Valley Road, Reading, PA | ) |

Case No.   19-1620-M-8

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the ____Eastern____ District of ____Pennsylvania____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Ann Kirkland (FBI)

*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ____September 24, 2019____

*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge

*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>DEVICE 9 - One Lenovo laptop computer, serial number<br>YD02LAU4, seized from the bedroom of Jose Gomez in 402<br>Spring Valley Road, Reading, PA | )<br>)<br>)  Case No. **19-1620-M-9**<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ September 24, 2019 _____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10)  Application for a Search Warrant  (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

In the Matter of the Search of )
)
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   ᴵ૧-ᑲ20 -M-10
DEVICE 10 - One gray and black Apple iPhone Model )
A1522, IMEI: 354451068777876, seized from the person of )
IVAN LUIS DEVALLE at the time of his arrest )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ September 24, 2019 _____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10)  Application for a Search Warrant  (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| DEVICE 11 - One black LG AT&T cellphone, IMEI: 355437101885775, serial # 90VTHJ188577, seized from IVAN AVALOS' bedroom in 820 Master St., Reading, PA | ) ) ) |

Case No.   19-1620-M-4

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
  See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:
  See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;

- ☑ contraband, fruits of crime, or other items illegally possessed;

- ☑ property designed for use, intended for use, or used in committing a crime;

- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ September 24, 2019 _____

*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| DEVICE 12 - One Apple iPhone, rose gold color with gray case and no further identifying numbers, seized from IVAN AVALOS' bedroom in 820 Master St., Reading, PA | ) ) ) |

Case No. 19-1620-M-12

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ September 24, 2019 _____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

In the Matter of the Search of                    )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*      )      Case No.   19-1620-M-13
DEVICE 13 - One Apple watch, 4 series, seized from IVAN   )
AVALOS' bedroom in 820 Master St., Reading, PA    )
                                                   )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ September 24, 2019 _____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10)  Application for a Search Warrant  (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>DEVICE 14 - One pink Apple iPhone, Model A1688, FCC<br>ID: BCG-E2946A, IC: 579C-E2946A seized from 356 South<br>4th Street, Apartment 1, Reading, PA (VICTOR BURGOS) | )<br>)<br>)<br>)<br>)<br>)    Case No.   19-1620-M-14 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____September 24, 2019_____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 19-1620-M-15
DEVICE 15 - One black Galaxy Note 3 cellular telephone, )
IMEI: 357518054681663 seized from 356 South 4th Street, )
Apartment 1, Reading, PA (VICTOR BURGOS) )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ September 24, 2019 _____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. **1a-1620-M-16**
DEVICE 16 - One black Alcatel cellular telephone Model )
5056N, IMEI: 014650002192587 seized from 356 South 4th )
Street, Apartment 1, Reading, PA (VICTOR BURGOS) )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ Eastern _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

❏ Continued on the attached sheet.

❏ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____September 24, 2019____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of ) <br> *(Briefly describe the property to be searched* ) <br> *or identify the person by name and address)* ) <br> DEVICE 17 - One AT&T ZTE cellular telephone Model ) <br> Z835, IMEI: 855964037196995, seized from stairwell to 356 ) <br> S. 4th Street, Apt 1, Reading, PA (VICTOR BURGOS) ) | Case No. <br> 19-1620-M-17 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Ann Kirkland (FBI)

*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____September 24, 2019_____

*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge

*Printed name and title*

AO 106 (Rev. 04/10)  Application for a Search Warrant  (requesting AUSA Justin Ashenfelter)

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* One locked Sentry safe seized from 820 Master Street, Reading, PA (IVAN AVALOS) | )  )  )  )  )  Case No.  19-1620-M-18 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§§ 846, 841(a)(1) | Drug Conspiracy/Distribution of Controlled Substances |

The application is based on these facts:

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ann Kirkland (FBI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   _____September 24, 2019_____

_____
*Judge's signature*

City and state: Philadelphia, Pennsylvania

Hon. Jacob P. Hart, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR WARRANTS TO SEARCH
CERTAIN ITEMS AND AUTHORIZATION TO SEIZE CERTAIN EVIDENCE**

Your affiant, Ann M. Kirkland, Special Agent, Federal Bureau of Investigation, being

duly sworn, deposes and states as follows:

## I.      INTRODUCTION AND AGENT BACKGROUND

1.      Your affiant is Ann M. Kirkland.  I have been a Special Agent with the Federal

Bureau of Investigation ("FBI") for over twenty-three years and am currently assigned to the FBI

Philadelphia Division, Allentown Resident Agency, Violent Gang Task Force.

2.      During my law enforcement career, I have received over 1,000 hours of training

and have supervised, conducted and participated in numerous investigations of criminal activity,

including but not limited to, the investigation of crimes against children, bank robberies,

mail/wire fraud, fugitives, interstate thefts, kidnappings, violent street gangs/criminal enterprises

and narcotics distribution, among other federal violations.  As a result of numerous

investigations, I have gained extensive experience in gathering evidence to obtain search

warrants, debrief defendants, witnesses, informants, and other persons who have had personal

experience and knowledge of the trafficking of illegal controlled substances, to include heroin,

marijuana, methamphetamine and both powder and crack cocaine.  I have conducted surveillance

of narcotics traffickers and have observed them interact with their suppliers, criminal associates,

and customers.  I have participated in numerous cases were court-ordered electronic suveillance

has been utilized.

3.      As a part of my official duties, I investigate criminal violations of the federal

narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841(a)(1),

843(b), 846, 848, 853, and 860.  I have received special training in the enforcement of laws

concerning controlled substances and narcotics trafficking organizations.  I am an investigative

or law enforcement officer authorized to conduct interceptions under Title 18, United States Code, Section 2510(7).

4.     I have conducted well over one hundred interviews of defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations, and have participated in all aspects of narcotics investigaiton including conducting surveillance, conducting undercover operations, analyzing information obtained from court-ordered pen register and trap and trace intercepts, and analyzing telephone toll information obtained as a result of the issuance of subpoenas.  Your affiant is aware that narcotics traffickers commonly use cellular telephones in furtherance of their narcotics trafficking activities and frequently change cellualar telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance.  Your affiant is also aware that narcotics traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to further prevent detection.

5.     During my law enforcement career, I have participated in numerous cases involving the distribution of narcotics where court-ordered electronic surveillance has been utilized.  I have assisted in numerous investigations that involved the monitoring and recording of court-authorized Title III interceptions.

## A. **Background: My Knowledge of Drug Trafficking Characteristics**

6.     Based on my training and experience, I am familiar with the ways in which narcotics dealers conduct their narcotics-related business, including, but not limited to their (a) methods of distributing narcotics; (b) methods of distributing narcotics proceeds; (c) use of telephone communication devices and digital display paging devices; (d) use of numerical codes and code words to identify themselves, the nature of the communication and to conduct their

narcotics-related transactions; and (e) common practice of registering for and obtaining these communication devices under false names, or names of relatives and/or friends to avoid financial responsibilities and tracking of criminal activities by law enforcement entities.

7.      As a result of my training and experience and discussions with other law enforcement officers with training and experience investigating drug trafficking offenses, I am aware that:

a.      Narcotics traffickers often keep currency on hand in order to maintain and finance their ongoing narcotics business;

b.      Narcotics traffickers commonly maintain in their residences and "stash" locations firearms, ammunition, and other weapons which they use to protect and secure their product and proceeds from their trafficking, as well as receipts and documents concerning the ownership or purchase of firearms;

c.      It is common for narcotics traffickers to secrete contraband, packaging and cutting materials, scales, paraphernalia, measuring devices, proceeds of narcotics sales, and records of narcotics transactions in secure locations within their residence, or those of their friends and/or associates for ready access and to conceal them from law enforcement authorities;

d.      Narcotics traffickers commonly maintain address books, directories, telephone books, computers and papers which reflect the names, addresses and/or telephone numbers of their associates in their trafficking activities;

e.      Narcotics traffickers take or cause to be taken photographs of themselves, their associates, their possessions and their controlled substances, and such photographs are usually maintained in their residence;

f.      Narcotics traffickers maintain books, records, receipts, notes, ledgers,

"owe sheets", airline tickets, money orders, and documents relating to the transportation, ordering, sale and distribution of controlled substances, and that these documents and records are maintained where the traffickers have ready access to them; and

g.      Narcotics traffickers use telephones, frequently mobile telephones, to facilitate their narcotics trafficking activities and to keep their mobile telephones on their person or otherwise close to the primary locations of the illegal business.  Records of such telephone calls, including telephone bills are commonly kept and maintained by the narcotics traffickers.

h.      Narcotics traffickers amass substantial proceeds from the sale of controlled substances and attempt to legitimize these profits through money laundering activities.

## B. Background: My Knowledge of Drug Trafficking Facilitated by the Use of Cellular Telephones

8.      Mobile communication devices, including smartphones and tablets, have become an intricate part of everyday life.  Most people have a mobile device.  A mobile device is simply a portable computing and communication system.

9.      As mobile devices have become the central way individuals communicate and obtain access to the Internet, they are readily used to facilitate criminal activities.

10.      Mobile telephones are commonly use to conduct illegal activities related to drug trafficking.  Among the many uses, mobile devices enable co-conspirators to readily and immediately communicate with one another.

11.      Drug traffickers use mobile devices to communicate with their sources of supply, their drug customers, and their co-conspirators about drug transactions.  I know that drug traffickers routinely keep information stored in their contacts identifying their sources of supply, drug customers, and their co-conspirators.  Furthermore, drug traffickers are known to use mobile devices to keep records of their sale of controlled substances.

12.     Mobile devices are routinely kept in close proximity to their users.  Most frequently, mobile devices are kept on a person's body, such as in a pocket.

## II.     **PURPOSE OF THIS AFFIDAVIT**

13.     This affidavit is submitted in support of an application to search three residences located in Berks County within the Eastern District of Pennsylvania ("EDPA").  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, specifically seventeen electronic devices ("**TARGET DEVICES**") which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B and one Sentry safe ("**SAFE**"), also currently in law enforcement possession.

### A. **Basis of Knowledge of Crimes Being Committed by Targets of the Investigation**

14.     I am personally involved in the drug trafficking investigation described below and have been assigned to assist in this investigation since December 2018.  The facts set forth below are derived from information known personally to me, and on information received from other law enforcement agents and officers, including agents and officers of the FBI, the Pennsylvania State Police, the Berks County District Attorney's Office, the United States Postal Service and the Allentown Police Department, as well as the following investigation methods:

a.     Physical surveillance;

b.     Observations made and information gathered through arrests of various individuals involved in drug trafficking;

c.     Information provided by cooperating sources;

d.     Purchases of controlled substances by an undercover officer and confidential sources;

e.     Information from Court ordered pen registers and Title-III wire intercepts;

f.     Review of records and documents of federal and/or state government agencies, and records and documents maintained in the normal course of business by private concerns.

15.     Because I am submitting this affidavit for the limited purpose of securing authorization for search warrants, I have not included every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to search the electronic devices and safe identified herein.

## B. Crimes and Violations of Federal Law Under Investigation

16.     As set forth below, I submit that there is probable cause to believe that within all the **TARGET DEVICES** and the **SAFE**, more specifically described in the respective Attachment A, there is evidence of the commission of the following crimes:

     a.  conspiracy to distribute controlled substances, including methamphetamine, heroin and cocaine, in violation of Title 21, United States Code, Section 846;

     b.  distribution and possession with intent to distribute controlled substances, including methamphetamine, heroin and cocaine, in violation of Title 21, United States Code, Section 841(a)(1);

     c.  use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843(b); and

     d.  aiding and abetting these offenses, in violation of Title 18, United States Code, Section 2 (collectively, "Target Offenses").

## C. Targets of the Investigation

17.     This investigation has revealed that the individuals Louis Daniel Morales a/k/a

"Trouble" ("MORALES"), Ivan Avalos, Sr. ("AVALOS"),  Ivan Luis Delvalle ("DELVALLE"),

Mario Ceballos ("CEBALLOS"), Victor Burgos, Jr. a/k/a "Bam Bam" ("BURGOS"), Elizabeth

Gomez ("GOMEZ"), and others known and unknown (collectively, "TARGET SUBJECTS"),

are involved in the distribution of heroin, opioid pills, cocaine, methamphetamine, and marijuana

throughout Berks County in the Eastern District of Pennsylvania.

      18.    In summary, this affidavit is being submitted in support of applications for search

warrants for the **TARGET DEVICES** and **SAFE** listed below, as further described in each

respective Attachment A, for the items specified in Attachment B hereto.

### III.   IDENTIFICATION OF TARGET DEVICES AND SAFE TO BE SEARCHED FOR EVIDENCE OF CRIMES

      19.    I believe that there is probable cause to search the following described **TARGET**

**DEVICES** and **SAFE**:

i.    **DEVICE 1** - One gray and black Apple iPhone Model A1634, FCC ID: BCG-E2944A, seized from the person of CEBALLOS, at the time of his arrest;

ii.    **DEVICE  2** - One tan Apple iPhone, with no further identifying information, seized from the bedroom of Luis Gomez ("L.GOMEZ") at the residence of CEBALLOS, 402 Spring Valley Road, Reading, PA ("PREMISES 1");

iii.    **DEVICE 3** - One Mac book laptop computer, serial number: C02GHRQ6DV13, seized from L.GOMEZ'S bedroom at PREMISES 1;

iv.    **DEVICE 4** - One black and blue cellular telephone Model QS5509A, IMEI: 357485092790080, seized from common area in PREMISES 1;

v.    **DEVICE 5** - White Apple iPhone, with no further identifying information, seized from the common area in PREMISES 1;

vi.    **DEVICE 6** - One gray Apple iPhone Model A1586, IMEI: 353026095897953, seized from  the common area in PREMISES 1;

vii.    **DEVICE 7** - One black Samsung flip phone Model SGH-T309, serial number: RV3YB17687H, IMEI: 357835001165222; seized from the common area in PREMISES 1;

viii.   **DEVICE 8** - One black Apple iPhone, with no further identifying information, seized from the bedroom of Jose Gomez ("J.Gomez") in PREMISES 1;

ix.   **DEVICE 9** - One Lenovo laptop computer, serial number YD02LAU4, seized from J.Gomez's bedroom in PREMISES 1; and

x.   **DEVICE 10** - One gray and black Apple iPhone Model A1522, IMEI: 354451068777876, seized from the person of DEVALLE, at the time of his arrest;

xi.   **DEVICE 11** - One black LG AT&T cellphone, IMEI: 355437101885775, serial number: 90VTHJ188577, seized from the master bedroom of AVALOS, 820 Master Street, Reading, PA, ("PREMISES 2").

**xii.**   **DEVICE 12** - One Apple iPhone, rose gold color with gray case and no further identifying numbers, seized from the master bedroom of AVALOS, PREMISES 2;

xiii.   **DEVICE 13** - One Apple watch, 4 series, seized from master bedroom of AVALOS in PREMISES 2;

xiv.   **DEVICE 14** - One pink Apple iPhone, Model A1688, FCC ID: BCG-E2946A, IC: 579C-E2946A seized during consent search of the residence of BURGOS, 356 South 4th Street, Apartment 1, Reading, PA, ("PREMISES 4"),

xv.   **DEVICE 15** - One black Galaxy Note 3 cellular telephone, IMEI: 357518054681663, seized from PREMISES 4;

xvi.   **DEVICE 16** - One black Alcatel cellular telephone Model 5056N, IMEI: 014650002192587, seized from PREMISES 4;

xvii.   **DEVICE 17** - One AT&T ZTE cellular telephone Model Z835, IMEI: 855964037196995, serial number 329F768280B0, recovered from stairwell leading to PREMISES 4.

xviii.   **SAFE** – One locked Sentry safe, seized from **PREMISES 2**.[1]

### IV.   SUMMARY OF THE INVESTIGATION TO DATE

### A.   Drug Trafficking Organization and Gang Activity

20.   During the month of October 2018, the Pennsylvania State Police ("PSP") and the

FBI (collectively referred to hereafter as "law enforcement") initiated an investigation involving

---

[1] TARGET DEVICES 1-16 are located in a secure law enforcement facility in Philadelphia, Pennsylvania, while the SAFE is located in a secure law enforcement facility in Allentown, Pennsylvania.

the distribution of heroin, cocaine, and large amounts of methamphetamine in the Berks County,

Pennsylvania area.  Law enforcement initiated this investigation because of information from a

confidential source, and law enforcement corroborated this information using various

investigative techniques.  The confidential source reported to law enforcement that MORALES

is a member of the "Nine Trey Gangsters" sect of the Bloods Street Gang[2] and that a number of

his associates were involved in a large-scale drug trafficking operation (DTO) that involved the

sale and distribution of heroin, cocaine and methamphetamine.  During the course of the

investigation, and through the use of the investigation tools referenced above as well as others,

law enforcement identified the following individuals, among others, as involved in drug

trafficking in and around the City of Reading in Berks County, within the Eastern District of

Pennsylvania ("EDPA"):

       a.    Louis Daniel Morales, a/k/a/ "Trouble" ("MORALES"), date of birth of

October 11, 1991; FBI Number 796625JD8; and Pennsylvania State Identification Number

("SID") 34001090.  MORALES uses telephone (610) 741-5245 ("TELEPHONE 1").  Through

various investigative techniques, law enforcement believes MORALES resides at 2822

Mannerchor Road, Temple, PA 19560, and from time to time resides at 923 Buttonwood Street

in Reading and other locations frequented by the DTO.  Between May 2019 and September

2019, law enforcement monitored court-authorized wiretaps on TELEPHONE 1 and intercepted

MORALES and his associates named herein.

       b.    Ivan Luis Delvalle a/k/a/ "Aii" ("DELVALLE"), date of birth of March

26, 1986; FBI Number 3NDFHM9T7; and SID 45257223.  DELVALLE utilizes telephone

number (484) 516-5189 ("Telephone 5189"). While using Telephone 5189, DELVALLE has

---

[2] The FBI's National Gang Intelligence Center has recognized the Nine Trey Gangsters as a Bloods street gang set of the United Blood Nation, founded in New York City in the early 1970s, a nationwide criminal organization.

been intercepted over a wiretap on TELEPHONE 1 discussing the price and distribution of
narcotics with MORALES.  During the course of this investigation, law enforcement has
concluded that DELVALLE resides at 923 Buttonwood Street, Reading, PA.

        c.      Mario Ceballos ("CEBALLOS"), date of birth of December 3, 1990; FBI
Number of 821579JD3, SID 31681715, and Indiana SID of 02143941.  Through various
investigative techniques, law enforcement believes CEBALLOS resides at 402 Spring Valley
Road, Reading, PA 19605.  CEBALLOS previously utilized telephone number (484) 516-6487
("TELEPHONE 6") and (484) 706-4698 ("TELEPHONE 9").  While using TELEPHONE 6,
CEBALLOS has been intercepted over TELEPHONE 1 discussing the price and distribution of
narcotics with MORALES.  Between June and July 2019, law enforcement monitored court-
authorized wiretaps on TELEPHONE 6.

        c.      Victor Burgos, Jr., a/k/a/ "Bam" ("BURGOS"), date of birth of March 29,
1987; FBI Number 614620DV8, and SID 26445027.  BURGOS has a Pennsylvania Operator's
License Number of 28131815, which lists his home address as 431 Elm Street, Reading, PA,
19601, and law enforcement surveillance has confirmed that BURGOS currently resides at that
location.  BURGOS utilizes telephone number (610) 451-1890 ("TELEPHONE 7").  While
using TELEPHONE 7, BURGOS has been intercepted over TELEPHONE 1 discussing the price
and distribution of narcotics with MORALES.  Between June and July 2019, law enforcement
monitored court-authorized wiretaps on TELEPHONE 7.

    **B.**    **Controlled Purchases of Drugs**

21.      During the course of the investigation, approximately 17 purchases of controlled
substances, utilizing both confidential informants and a law enforcement officer acting in an
undercover capacity ("UC"), have been made from MORALES and some of the TARGET

SUBJECTS. Many of the purchases were set up with consensually monitored and recorded telephone calls to MORALES on TELEPHONE 1.

22.     All of the substances obtained in these controlled purchases field tested positive for the presence of cocaine, heroin, or methamphetamine and either have been submitted or are in the process of being submitted as narcotics exhibits for a formal analysis at the Drug Enforcement Administration ("DEA") Northeast Laboratory. To date, results for four of these narcotics exhibits have been received from the DEA Laboratory with results that confirmed the substances were cocaine, heroin, or methamphetamine depending on the particular exhibit.

### C.     Court-Authorized Wiretaps

23.     On May 9, 2019, the Honorable Anita B. Brody, Judge of the United States District Court Judge, Eastern District of Pennsylvania, issued an order authorizing the initial intercept for thirty days on TELEPHONE 1, which is subscribed to GOMEZ at 2282 Mannerchor Road, Reading, PA ("PREMISES 3"). Intercepts began on May 10, 2019, and ended on June 8, 2019. On June 20, 2019, the Honorable Anita B. Brody issued an order authorizing the interception of electronic communications on TELEPHONE 1 for an additional 30-day period. Intercepts began on June 20, 2019, and ended on July 20, 2019.

24.     On June 20, 2019, the Honorable Anita B. Brody issued an order authorizing a 30-day extension of intercepts on TELEPHONE 1 and the initial interception of electronic communications over TELEPHONE 6, which agents believed was being utilized by CEBALLOS, and the initial interception of electronic communications over TELEPHONE 7, which agents determined belonged to BURGOS.[3] Intercepts on TELEPHONE 6 and

---

[3] The individual utilizing TELEPHONE 7 was initially identified as JIMENEZ in earlier affidavits submitted to the Court in this matter. Based upon intercepts of TELEPHONE 7, in conjunction with telephone GPS locater information and physical surveillance, on June 21, 2019, the user of TELEPHONE 7 was confirmed by law enforcement to actually be BURGOS.

TELEPHONE 7 began on June 20, 2019, and ended on July 20, 2019.

25.     On August 12, 2019, the Honorable Anita B. Brody issued an order authorizing a

30-day extension of intercepts on TELEPHONE 1 and the initial interception of electronic

communications over TELEPHONE 9, utilized by CEBALLOS.  Intercepts on TELEPHONE 1

began on August 12, 2019, and are ongoing as of this application.  Law enforcement determined

that CEBALLOS ceased utilizing TELEPHONE 9 on August 10, 2019, and no intercepts of

TELEPHONE 9 were captured.  Intercepts on TELEPHONE 1 began on August 12, 2019, and

ended on September 11, 2019.

26.     To date, law enforcement officers have intercepted over 960 calls and 2246 text

messages pertinent to MORALES, CEBALLOS, BURGOS, and their associates involving

narcotics trafficking.  In the periods of wire and electronic interception, agents and officers have

conducted surveillance of MORALES, CEBALLOS, BURGOS and their co-conspirators

conducting narcotics sales and deliveries as well as money collections and deliveries.  Many of

the telephone calls and text messages obtained from the authorized wire and electronic

interceptions listed above are summarized within this affidavit.

### D.     Conclusions Drawn From Investigation

27.     From this investigation – including, but not limited to physical and video

surveillance conducted by law enforcement, telephone subscriber records and call detail

records/analysis, National Crime Information Center ("NCIC") records related to the TARGET

SUBJECTS and their associates, state and local law enforcement reports of contact with these

individuals; controlled purchases of heroin, cocaine and methamphetamine; statements of and

interviews with confidential sources, and the interception of numerous telephone calls and text

messages – I believe that there is probable cause to believe that MORALES is conspiring with

the TARGET SUBJECTS, and others known and unknown, to distribute heroin, cocaine and methamphetamine within EDPA.

28.    Through intelligence from UC, confidential informants, toll and pen register data, physical surveillance and through court-authorized wire and electronic interceptions, the investigation has revealed, among other things, that MORALES and his co-conspirators rely on cellular telephones to arrange narcotics transactions and to communicate with each other and that they use the TARGET DEVICES, listed in Attachment A, to facilitate the distribution and sale of illicit drugs.

## V.    SPECIFIC AND ARTICULABLE FACTS IN SUPPORT OF PROBABLE CAUSE TO SEARCH TARGET DEVICES AND SAFE FOR EVIDENCE OF DRUG TRAFFICKING AND RELATED CRIMES

**AVALOS and MORALES used cellular phones to communicate about drug trafficking on June 7, 2019**

29.    On June 7, 2019, between 4:48 p.m. and 11:56 p.m., agents intercepted a text message exchange between MORALES on TELEPHONE 1 and his narcotics trafficking associate, AVALOS, who was using telephone number 484-755-4951 ("TELEPHONE 8"). The following is an excerpt of the pertinent portion of the text message exchange:

| | |
|---|---|
| *AVALOS:* | *Nevermind bro ima need to get rid of them in full to pay someone off let me know if you got anyone bro* |
| *MORALES:* | *Bro if you can do wat I asked I can do a whole one in 2 3 days* |
| *MORALES:* | *I need 2 now and 6 tomorrow afternoon and I aint' got shit* |
| *AVALOS:* | *Ima do for you just [b]ring (sic) the bread I'll be home soon* |
| *MORALES:* | *He here now been waitin after you told me I asked Mario and he actin weird smh* |
| *MORALES:* | *I miss this bro* |
| *AVALOS:* | *I'm not home right no though bro I'm at my in-laws and Leesport* |
| *MORALES:* | *Dam it's cool hopefully he gets here soon bro shit kills me every time* |
| *AVALOS:* | *Yo you still need them to I just got home* |
| *AVALOS;* | *Yo* |

| | |
|---|---|
| *MORALES:* | *I need 1 in and hour they On they way back down now if that's cool* |
| *AVALOS:* | *Yea just come with the bread bro it is shaky but good shit you know it but they weigh at 31* |
| *AVALOS:* | *Then I got 2 other ones that one weighs 45.6 that one for 340 the other weights 34.5 for 310* |
| *MORALES:* | *Yo bro* |
| *MORALES:* | *They b here on 15* |
| *AVALOS:* | *Ok I'm at home though let me go get them out my bois (sic) house then come through but did you read my message* |
| *MORALES:* | *On my way* |
| *MORALES:* | *It's just one bro* |
| *AVALOS:* | *Ok* |
| *AVALOS:* | *I'll be right back though* |

30.     During this conversation, your affiant believes that AVALOS and MORALES

discussed various weights and wholesale prices of methamphetamine, including reference to

"45.6" for 340, and "34.5" for "310." Their exchange also made apparent arrangements for

AVALOS and MORALES to meet in person. Based upon my knowledge of the prices of

controlled substances, I believe that AVALOS and MORALES were discussing the prices of

methamphetamine in the range of ounces for sale. For instance, in the wholesale market, I know

that 45.6 grams of methamphetamine can be valued at approximately $340, while 34.5 grams of

methamphetamine can be valued at approximately $310, which provides context and meaning

for the figures discussed between MORALES and AVALOS during their text message exchange.

Furthermore, on June 8, 2019, at approximately 12:15 a.m., law enforcement surveillance

observed MORALES meeting with AVALOS in front of 820 Master Street, which is known by

law enforcement to be AVALOS' residence.

31.     Based upon this text message conversation over cellular phones, I believe that

MORALES was using TELEPHONE 1 to communicate with AVALOS over TELEPHONE 8 to

discuss drug trafficking. Accordingly, the TARGET DEVICES, specifically, DEVICE 11,

DEVICE 12, and DEVICE 13, recovered from AVALOS' house (PREMISES 2) at the time of his arrest were used in furtherance of drug trafficking. Moreover, I submit there is probable cause to believe that TELEPHONE 8 is one of the three devices recovered from AVALOS' residence.

## MORALES and CEBALLOS used cellular phones to coordinate the sale of a pound of methamphetamine to UC

32.     On May 15, 2019, UC purchased methamphetamine from MORALES and CEBALLOS in the vicinity of Gray Street, Reading, PA. At approximately 6:46 p.m., agents intercepted an outgoing call on TELEPHONE 1 from MORALES to UC (Session 00629). During the conversation, MORALES told UC that he was "waiting for his boy," and "I'm going to my man's to get it it's the same thing[,] I just[,] you know what I mean[,] I have to wait for him to come bring it to me." MORALES then told UC to come back to the vicinity of Gray Street at 6:50 p.m., adding: "[C]uz he'll be here around 7:05."

33.     At approximately 7:05 p.m., agents intercepted an outgoing call on TELEPHONE 1 from MORALES to an unidentified male using telephone number ending in 6809 (referred to as "UM6809") (Session 00632). During the conversation, MORALES told UM6809, in substance, that UC just left but MORALES would see if UC would return. The following is a verbatim transcription of the pertinent portion of MORALES' conversation with UM6809:

> MORALES:     This nigga just left. Yeah what's up what you doing?
>
> UM6809:      Shit nigga I was busy a little busy when I got here. Fucking with a car and shit.
>
> MORALES:     (UI) My fucking my uh neighbor just left man.
>
> UM6809:      Oh yeah.
>
> MORALES:     Yeah.
>
> UM6809:      Shit my bad nigga I had to move the car and shit.
>
> MORALES:     Nah you good.

> UM6809:     *I had to change my spot and changed my number.*
>
> MORALES:    *I'm not mad at you bro.  He was just was real hyped about that bike.  I'm not gonna lie to you.  Let me see if he'll come back if he didn't leave too far and I'll call you right back.*
>
> UM6809:     *Yo it's cool with patience.  You feel me?*
>
> MORALES:    *Yeah I know that.*
>
> UM6809:     *Alright.*
>
> MORALES:    *Alright.*

34.     Based upon my review of this conversation and my knowledge of this investigation, when MORALES told UM6809, "This nigga just left . . . my uh neighbor just left," MORALES was referring to UC because MORALES had just advised UC that he was waiting on his source of supply to arrive with the drugs.  MORALES also used coded language to tell UM6809 that "his neighbor," or UC, had been very interested in the "bike," which is coded language for methamphetamine based upon the substance UC had intended to purchase.

35.     At approximately 7:07 p.m., agents intercepted an incoming call on TELEPHONE 1 to MORALES from CEBALLOS utilizing TELEPHONE 6 (Session 00633). During the call, CEBALLOS told MORALES that he was approximately 15 minutes away from MORALES' location and that MORALES should, "[T]ell him it's for sure, tell him I'm already driving there so to be there," making an apparent reference to UC.  The following is a verbatim transcription of the pertinent portion of CEBALLOS' telephone conversation with MORALES:

> MORALES:     *Yo*
>
> CEBALLOS:    *Yeah, well I'm driving from the South but I'm already ready so I figure*
>
> MORALES:     *Yeah, nigger,*
>
> CEBALLOS:    *Fifteen*
>
> MORALES:     *Yeah*
>
> CEBALLOS:    *Fifteen minutes*
>
> MORALES:     *(UI)*

CEBALLOS:    *U/I , you just told me that shit so..*

MORALES:    *No I'm not mad at you.*

CEBALLOS:    *So tell him I'm already, it's all ready it's all here, give me like fifteen minutes to get there*

MORALES:    *Say no more, say no more but if you can't make it 15 (UI) he's already seen some bull*

CEBALLOS:    *Nah tell him it's for sure, tell him I'm already driving there so to be there.*

MORALES:    *Alright. alright, say no more, say no more.*

36.    Shortly after this call, MORALES sent a text message to UC, advising: "He is on his way." Based on my training, experience, and overall knowledge of this investigation, your affiant knows that when MORALES texted UC, "He is on his way," MORALES was informing UC that his source of supply for methamphetamine was en route to their location.

37.    At approximately 7:24 p.m., agents intercepted an incoming call on TELEPHONE 1 to MORALES from CEBALLOS utilizing TELEPHONE 6 (Session 00637). The following is a verbatim transcription of CEBALLOS' conversation with MORALES:

MORALES:    *(UI)*

CEBALLOS:    *Yo bro (UI).  Yo what I was going to tell you is I'm passing Reading High right now so tell your man to wait I'm close by, alright?*

MORALES:    *Alright.*

CEBALLOS:    *Facetime me if you want.  Tell' em yo I got it right here in my lap.*

MORALES:    *Alright, it's cool.  I'm waiting for you (UI) he can't no where now.*

CEBALLOS:    *Nah tell' em I'm already over there.  I'm gonna go to your mom's crib.*

38.    Based on my training, experience, and overall knowledge of this investigation, I believe that when CEBALLOS told MORALES, "I got it right here in my lap," CEBALLOS was referring to the methamphetamine intended for sale to UC.  Also, during their conversation, CEBALLOS invited MORALES to "Facetime me if you want."  Based on my training and experience, I know that narcotics traffickers utilize encrypted FaceTime communications in an effort to thwart law enforcement's efforts to conduct electronic surveillance of their

communications.  Based upon CEBALLOS' conversation with MORALES, your affiant believes

that members of this organization use FaceTime to this end.

39.     At approximately 7:30 p.m., law enforcement surveillance stationed in the

vicinity of Gray Street, Reading, PA, observed MORALES enter UC's vehicle.  A few minutes

later, law enforcement surveillance observed a silver pick-up truck bearing Pennsylvania license

plate ZJB5545,[4] arrive to the vicinity of Gray Street, at which point MORALES exited UC's

vehicle and approach the silver pick-up truck.  Law enforcement surveillance observed

MORALES have a short conversation with the occupant(s) of the pick-up truck and then walk

back to UC's vehicle carrying a clear plastic baggie containing a visible white substance.

40.     At the conclusion of UC's meeting with MORALES, law enforcement followed

UC to a pre-determined meeting location where UC provided law enforcement with a clear

plastic baggie of a white crystalline substance.  Law enforcement conducted a field test on the

white crystalline substance, which tested positive for the presence of methamphetamine with a

preliminary weight of approximately one pound.  The substance was then submitted to the DEA

Northeast Laboratory, which analyzed the substance and concluded that it was 446.9 grams of

methamphetamine with a 100% purity.  Law enforcement debriefed UC, who said MORALES

got into the front passenger seat of UC's vehicle and they had a brief conversation.  UC said

MORALES exited UC's vehicle and walked up the street where he had a brief conversation with

the occupants of the pick-up truck.  UC then said, after a few minutes, MORALES returned to

UC's vehicle and re-entered the front passenger seat of UC's vehicle and handed UC the bag of

methamphetamine.  UC said MORALES told him/her that his usual source of supply for

---

[4] Pennsylvania Department of Transportation records reveal that Pennsylvania license plate ZJB5545 returns to a 2005 Ford pick-up truck registered to Sergio Ceballos, 3438 Magnolia Avenue, Reading, PA, 19605.

methamphetamine was not answering his calls but the methamphetamine came from that individual's associates, so it would be the same quality as the methamphetamine MORALES sold to UC on previous occasions.

41.     Based upon the intercepted conversation between MORALES and CEBALLOS in which CEBALLOS stated, "[T]ell him I'm already driving there so to be there . . . Tell' em yo I got it right here in my lap," as well as MORALES' apparent retrieval of the methamphetamine from the person inside the pick-up truck registered to "Sergio Ceballos" (CEBALLOS' father), I believe that CEBALLOS supplied the one pound of methamphetamine that MORALES sold to UC in exchange for $5,500.

42.     Accordingly, I believe that MORALES was using TELEPHONE 1 to communicate with CEBALLOS over TELEPHONE 6 to discuss drug trafficking; specifically, the trafficking of methamphetamine purchased by UC on May 15, 2019.  Further, the TARGET DEVICES, specifically, DEVICE 1, DEVICE 4, DEVICE 5, DEVICE 6, and DEVICE 7 recovered from CEBALLOS' house (PREMISES 1) on September 5, 2019 were used in furtherance of drug trafficking.  Moreover, I submit there is probable cause to believe that TELEPHONE 6 is one of the five cellular phones recovered from CEBALLOS' residence.

**MORALES and BURGOS used cellular phones to coordinate the sale of heroin to UC on June 25, 2019**

43.     On June 25, 2019, under the direction and control of law enforcement, UC purchased heroin from MORALES, in the vicinity of 43 Arlington Street, Reading, PA.  At approximately 1:31 p.m., agents intercepted an incoming call to MORALES on TELEPHONE 1 from UC (Session 03672).  During the call, UC and MORALES discussed a "stack" and "downtown stuff."  After the call, UC told law enforcement that, based on previous dealings and conversations with MORALES, he/she knew the term "stack" to mean one thousand dollars and

"downtown stuff" to mean heroin.   The following is a verbatim transcript of the pertinent

portion of the conversation:

> UC:          *Yo, bro, what's good.*
> MORALES:     *Yeah, my phone was hooked up to that stupid-ass Bluetooth shit.*
> UC:          *That's alright, man. Hey - I got, I got a stack I was looking to come for the*
>              *downtown stuff. (UI)*
> MORALES:     *Alright, uhh...give me...I might be able to only get it packaged up, if that's*
>              *cool. Imma see what I can do to see if I can get it the other way, how I got*
>              *it for you -*
> UC:          *Yeah yeah, I'm gonna call you back - just - just let me know, yeah -*
> MORALES:     *If not, I'll get you, I'll get you a hook-up on the packaging, alright?*
> UC:          *Alright, alright.*
> MORALES:     *Alright, I'll tell you right now, bro.*

44.     Based upon my knowledge of the investigation, coupled with my training and

experience in the investigation of narcotics trafficking, I believe that when MORALES told UC

he "might be able to only get it packaged up" but would "see if [he] could get it the other way,"

MORALES was acknowledging that it is common for heroin dealers to charge more for heroin

that is packaged in personal use amounts than for loose heroin.

45.     At approximately 1:33 p.m., agents intercepted an outgoing call from MORALES

on TELEPHONE 1 to BURGOS on TELEPHONE 7 (Session 03673).  The following is a

verbatim transcript of the pertinent portion of their conversation:

> MORALES:     *You right?*
> BURGOS:      *Yeah.*
> MORALES:     *That situation around?*
> BURGOS:      *What was that? I don't know.*
> MORALES:     *Well, I owe you 60 from uh, the, the, the brickies that I took from you that*
>              *one time.*
> BURGOS:      *Ah, yeah.*
> MORALES:     *Alright, listen, you don't got it, you don't got it, like, um...any Grizzly type*
> shit?
> BURGOS:      *Yeah, bro!*

| | |
|---|---|
| *MORALES:* | *Alright, well, listen, Imma come holler at you, just have them ready for me.* |
| *BURGOS:* | *I'm not at home, I'll be home in a little bit.* |
| *MORALES:* | *What's a little bit?* |
| *BURGOS:* | *Umm...like 10 minutes, like 10-15 minutes.* |
| *MORALES:* | *Just call me - yo, bro, please, don't forget, I gotta (UI) at home first.* |
| *BURGOS:* | *I gotcha. Alright.* |
| *MORALES:* | *Say no more. Yo, listen, listen, listen, real quick - a number, what's the number?* |
| *BURGOS:* | *For you? Uh...* |
| *MORALES:* | *On a joint. Ya know what I mean?* |
| *BURGOS:* | *65.* |
| *MORALES:* | *Diablo. Damn, nigga, that shit hurt my heart, but alright, I'll figure something -* |
| *BURGOS:* | *Too much?* |
| *MORALES:* | *Yeah..."* |
| *BURGOS:* | *(UI) a thousand?* |
| *MORALES:* | *(Sputtering) I usually get it for 6-0, but my man not picking up, and I know (you not my man, so I'm not gonna (UI). Alright, Vics, I got you, alright, UI), I got you.* |

46.     During this conversation, MORALES and BURGOS initially discussed

"brickies," and then MORALES asked if BURGOS had any "grizzly type shit." Although no

specific amount of "grizzly type shit" was actually discussed, MORALES asked BURGOS for

the "brickies I took from you that one time," providing insight into their common understanding

of an amount that MORALES had obtained from BURGOS on a recent prior occasion. Based

upon my knowledge of the coded terminology commonly utilized by narcotics dealers, I believe

that "brickies" refer to packaged heroin (in individual servings for user consumption) and

"grizzly" refers to loose or unpackaged heroin. MORALES then asked BURGOS for "the

number," which was inquiry into the amount of money BURGOS would charge for the heroin.

When BURGOS responded, "65," I believe that he was quoting a price of $65 per gram which is

consistent with the price point for a gram of heroin sold in the Reading area.

47.     At approximately 2:01 p.m., agents intercepted an outgoing call from MORALES

on TELEPHONE 1 to BURGOS on TELEPHONE 7 (Session 03676).  The following is a

verbatim transcript of the pertinent portion of their conversation:

| | |
|---|---|
| *MORALES:* | *Yo I got him coming down now, just uh, have 12 ready for me.* |
| *BURGOS:* | *Aight.* |
| *MORALES:* | *Aight like 12 joints ready for me but (UI).* |
| *BURGOS:* | *Huh?* |
| *MORALES:* | *He be here in like the next 45 minutes (UI).* |
| *BURGOS:* | *That's cool just hit me up* |
| *MORALES:* | *I got you.  (UI) for sure though because I wanna be able to . . . you know what I mean?* |
| *BURGOS:* | *I got you.* |

48.     At approximately 3:11 p.m., agents intercepted an outgoing call from MORALES

on TELEPHONE 1 to BURGOS on TELEPHONE 7 (Session 03689).  The following is a

verbatim transcript of the call:

| | |
|---|---|
| *MORALES:* | *He's gonna be here in like 25 minutes, Imma go straight to you when he gets here.* |
| *BURGOS:* | *Alright.* |

49.     At approximately 3:55 p.m., agents intercepted an incoming call on MORALES

on TELEPHONE 1 from UC (Session 03693).  The following is a verbatim transcript of the call:

| | |
|---|---|
| *UC:* | *Hey bro I'm at the same spot.* |
| *MORALES:* | *I'll be there in like, give me like 15 minutes. I'll be right over there.* |
| *UC:* | *Ok* |
| *MORALES:* | *Alright* |
| *UC:* | *Alright  man* |

50.     At approximately 3:56 p.m., agents intercepted an incoming call to BURGOS on

TELEPHONE 7 from MORALES on TELEPHONE 1 (Session 1025).  The following is a

verbatim transcript of the pertinent portion of the conversation:

| | |
|---|---|
| *BURGOS:* | *Hello?* |

| | |
|---|---|
| *MORALES:* | *Yo, you want to meet me towards Dumbo's, because that's where he's meetin' me?  Or you want me to just come grab you?* |
| *BURGOS:* | *Uh?* |
| *MORALES:* | *I'll come grab it and come back.  I'll be there in a couple minutes.* |
| *BURGOS:* | *I'm not at home.  I'm goin' home now.* |
| *MORALES:* | *Alright.  How long until you're there?* |
| *BURGOS:* | *I'm leavin Glenside, so like 5 minutes.* |
| *MORALES:* | *Hurry up, please. He's already there.* |
| *BURGOS:* | *Alright.* |

51.     At approximately, 4:08 p.m., surveillance units stationed in the vicinity of

BURGOS' residence on Elm Street in Reading observed BURGOS driving a blue Acura bearing

Pennsylvania license plate KWP8352  arrive at that location and park on Madison Street.  At

approximately 4:13 p.m., surveillance units observed DELVALLE, carrying a small white

package, enter the driver's side of a black Audi with Pennsylvania license plate LVE5315, which

was double-parked on Madison Street directly across from BURGOS' Acura.

52.     Based on the context of the conversations and the timing of the calls detailed

above, I believe that when MORALES told BURGOS, "Yo, I got him coming down now,"

MORALES was referring to UC coming to meet MORALES in Reading to purchase heroin.  In

support of my belief, UC eventually purchased heroin from MORALES that same day.

Immediately after UC called MORALES and advised that he/she was present at the Arlington

address, MORALES called BURGOS.  Shortly thereafter, surveillance observed DELVALLE, in

the vicinity of BURGOS' residence on Elm Street, enter the driver's side of the Audi in

possession of a small white package.  Based on this sequence of events, I believe that BURGOS

supplied DELVALLE and MORALES with the heroin that the UC purchased from MORALES

on June 25, 2019.

53.     On June 25, 2019, law enforcement provided UC with audio/video recording

devices and $1,000 in pre-recorded buy money.  Surveillance units observed MORALES as a

passenger in the Audi that DELVALLE was driving in the vicinity of 43 Arlington Street, the area to which MORALES directed the UC to meet him for the heroin deal. At approximately 4:20 p.m., law enforcement observed MORALES exit the Audi and enter the front passenger seat of UC's vehicle. After a few minutes, MORALES exited UC's vehicle and waited for DELVALLE to pick him up in the Audi. At the conclusion of UC's meeting with MORALES, law enforcement met with UC at a prearranged location where UC provided law enforcement with a plastic baggie of off-white powder, which field-tested positive for the presence of heroin, weighing approximately 14 grams. UC told law enforcement that, when he/she arrived on Arlington Street, DELVALLE dropped MORALES off, at which point MORALES entered UC's vehicle. UC said he/she provided MORALES with the pre-recorded buy money and MORALES provided UC with the baggie containing the heroin.

54.     Following the sale of 14 grams of heroin to UC, at approximately 4:53 p.m., agents intercepted an outgoing call from BURGOS on TELEPHONE 7 to MORALES on TELEPHONE 1 (Session 1044). The following is a verbatim transcription of the pertinent portion of the conversation:

> *MORALES:*   *I'm dropping off this nigga at Aii at work, and then I'm coming straight to*
> *you.*
> *BURGOS:*    *C'mon, bro, what the fuck?*
> *MORALES:*   *Another minute...shut your bitch ass up.*
> *BURGOS:*    *Nah, listen. Take it to Chris.*
> *MORALES:*   *I was just over there, nigga, you should have told me that.*
> *BURGOS:*    *Well I didn't know. Well, just drop it off to Chris.*
> *MORALES:*   *Alright, say no more.*
> *BURGOS:*    *Alright.*

55.     Between 7:52 p.m. and 7:53 p.m., agents intercepted an outgoing telephone call from BURGOS on TELEPHONE 7 to MORALES utilizing TELEPHONE 1 (Session 01055). The following is a verbatim transcript of the pertinent portion of the conversation:

BURGOS:      *Where you at bro?*
MORALES:     *What you mean where I'm at?*
BURGOS:      *You took that to Chris already?*
MORALES:     *Yeah.  Yeah why?*
BURGOS:      *No cuz I asked Dumbo.  Dumbo said he never even seen you.*
MORALES:     *Yeah I took it to Chris nigga.*
BURGOS:      *Alright I'm gonna slap the shit out of him.*
MORALES:     *UI...that nigga.*
BURGOS:      *Alright my bad I forgot.*
MORALES:     *He burned me for that bread.*
BURGOS:      *What bread?*
MORALES:     *Nigga.  I gave that nigga all that bread right?*
BURGOS:      *Yeah.*
MORALES:     *That nigga's car two payments.  This nigga...I'm like yo like start paying
             me back little by little.  He gonna be like oh.  I'm like yo my cousin needs a
             system put in you could take a hundred dollars off what you owe me.
             Nigga I don't owe you nothing.  All them favors I did for you.  Nigga
             anything I ever asked you for nigga you got something out of it nigga.  I
             bought you a pack of cigarettes.  If I asked you to come with me to help me
             with my kids you got in somewhere for free, ate for free.  How to fuck you
             charging me for something?  Know what I'm saying.*
BURGOS:      *I didn't even know that.*
MORALES:     *Yeah nigga like talking about I don't owe you nothing.  Yo bro I'm cool
             bro...keep that money...UI*
BURGOS:      *He's a weirdo bro I told you.*
MORALES:     *UI*
BURGOS:      *Yeah that's what I'm saying...UI (laughs)*
MORALES:     *UI*
BURGOS:      *Alright though hit me up if anything bro.*
MORALES:     *I got you...I'm gonna need your...UI...know what I mean.*
BURGOS:      *Alright I go you.*

56.     Based upon the timing of this call and your affiant's knowledge of the

investigation to date, I believe that BURGOS was calling MORALES to obtain the proceeds of

the heroin sale to UC, which occurred a short time earlier.  When MORALES informed

BURGOS that he was dropping "Aii" off at work,[5] BURGOS then directed MORALES to take it to "Chris." I believe that this exchange of phone calls, when assessed within the sequence of events surrounding the sale of heroin to UC, makes clear that BURGOS, MORALES, and DELVALLE are working together to distribute heroin and sharing in the proceeds of their sales which is facilitated by their collective use of the residence at 43 Arlington Street and through their communication over cellular phones.

57.    Accordingly, I believe that MORALES was using TELEPHONE 1 to communicate with BURGOS over TELEPHONE 7 to discuss drug trafficking; specifically, the trafficking of heroin purchased by UC on June 25, 2019. Further, the TARGET DEVICES, specifically, DEVICE 14, DEVICE 15, DEVICE 16, and DEVICE 17, recovered from BURGOS' house (PREMISES 4) at the time of his arrest were used in furtherance of drug trafficking. Moreover, I submit there is probable cause to believe that TELEPHONE 7 is one of the four devices recovered from BURGOS" residence.

**September 5, 2019, Arrests and Searches of the PREMISES**

58.    On September 5, 2019, law enforcement executed federal search warrants, issued on September 4, 2019, by the Honorable Lynne A. Sitarski, United States Magistrate Judge, Eastern District of Pennsylvania, at: the residence of CEBALLOS, 402 Spring Valley Road, Reading, Pennsylvania, 19605 (PREMISES 1); the residence of AVALOS, 820 Master Street, Reading, Pennsylvania, 19602 (PREMISES 2); and and the residence of MORALES' mother, Elizabeth Gomez, 2282 Mannerchor Road, Reading, PA (PREMISES 3). Law enforcement also conducted a consensual search at BURGOS' residence, 356 South 4th Street,

---

[5]    Based upon my review of phone conversations held over the course of this investigation, and the surveillance units' observations of DEVALLE and MORALES together during the sale of heroin to UC, I believe that MORALES' reference to "Aii" was DELVALLE.

Apartment 1, Reading, PA ("PREMISES 4").

59. On September 5, 2019, law enforcement also executed federal arrest warrants, issued on September 4, 2019, by the Honorable Lynne A. Sitarski, United States Magistrate Judge, Eastern District of Pennsylvania, for AVALOS, BURGOS, CEBALLOS and DEVALLE.

**Results of Search of PREMISES 1**

60. During the execution of the federal search warrant on PREMISES 1, law enforcement seized, among other items, approximately three pounds of methamphetamine, a hydraulic kilo press, a SCCY 9MM handgun with a partially obliterated serial number S33648, over fifty rounds of 9MM ammunition, numerous items of drug paraphernalia and packaging material, a tan Apple iPhone, with no further identifying information (**DEVICE 2**), a Mac book laptop computer, serial number: C02GHRQ6DV13 (**DEVICE 3**), a black and blue cellular telephone Model QS5509A, IMEI: 357485092790080 (**DEVICE 4**), a white Apple iPhone, with no further identifying information (**DEVICE 5**), a gray Apple iPhone Model A1586, IMEI: 353026095897953 (**DEVICE 6**), a black Samsung flip phone Model SGH-T309, serial number: RV3YB17687H, IMEI: 357835001165222 (**DEVICE 7**), a black Apple iPhone, with no further identifying information, (**DEVICE 8**) and a Lenovo laptop computer, serial number YD02LAU4 (DEVICE 9)

61. **DEVICE 2** and **DEVICE 3** were seized from the bedroom of L.GOMEZ, along with approximately one pound of crystal methamphetamine, an extended magazine for a .9mm handgun containing 26 live rounds of ammunition, a black vest-style body armor and two blenders containing crystal methamphetamine residue. During the execution of the search warrant, law enforcement encountered L.GOMEZ in this bedroom. L.GOMEZ also identified the bedroom as his room and law enforcement corroborated this information with the seizure of

documentation address to "Luis Gomez" in the bedroom.  L.GOMEZ was arrested on a federal charge of Title 21 United States Code Section 841(b)(1)(A), possession with intent to distribute 50 grams or more of methamphetamine.

62.     **DEVICE 5**, **DEVICE 6**, and **DEVICE 7** were seized from the living room of the residence, along with the SCCY 9MM handgun, a digital scale, a baggie containing approximately 8 grams of crystal methamphetamine and narcotics packaging materials.

63.     **DEVICE 8** and **DEVICE 9** were located in the bedroom of Jose Gomez ("J.Gomez").  Although J.Gomez's participation in the drug trafficking organization was not apparent to law enforcement prior to the execution of the federal search warrant, due to the location of narcotics packaging material, the 9MM handgun, the digital scale and approximately 8 grams of crystal methamphetamine in the common area of PREMISES 1, your affiant believes that J.Gomez was, at a minimum, aware of and complicit in the narcotics activities occurring at the residence and that there is probable cause to search **DEVICE 8** and **DEVICE 9** for evidence of drug trafficking.

64.     Based upon the location of the DEVICES 2 though 9 inside PREMISES 1, which was riddled with methamphetamine, drug paraphernalia, a pistol, and ammunition, I believe there is probable cause to believe that electronic evidence of drug trafficking will be found within the contents of the DEVICES.  As detailed below, I know that drug traffickers will often communicate with each other over cellular phones via voice and text messaging; moreover, drug traffickers often send multimedia (photos, videos, recordings) of their products and their proceeds when they communicate.  They also use messaging applications and websites which are accessible on computers/laptops.  Computers are also used, in my experience, to keep record of drug transactions including debts owed and money spent during the course of a conspiracy.  The

recovery of DEVICES 2 through 9 inside of PREMISES 1, and the circumstances surrounding the search and arrest of J.Gomez, leads me to the conclusion that there will be evidence of drug trafficking on the devices.

**Results of Search of PREMISES 2**

65.     During the execution of the search warrant on PREMISES 2, law enforcement seized, among other items, approximately 16 pounds of methamphetamine, approximately three and a half pounds of marijuana, a Glock .40 caliber handgun with serial number WAD182, a DPMS Panther Arms Modified AR-15 rifle with serial number FFH238970, over 100 rounds of .223 and .40 caliber ammunition, numerous items of drug paraphernalia and packaging material, a cash counting machine, the Sentry Safe serial number E71304361* (**SAFE**), one black LG AT&T cellphone, IMEI: 355437101885775, serial number: 90VTHJ188577 (**DEVICE 11**), one Apple iPhone, rose gold color with gray case and no further identifying numbers (**DEVICE 12**) and one Apple watch, 4 series (**DEVICE 13**).

66.     **DEVICE 11**, **DEVICE 12** and **DEVICE 13** were all seized from the AVALOS' bedroom in PREMISES 2.   As detailed previously, I know that drug traffickers will often communicate with each other over cellular phones via voice and text messaging; moreover, drug traffickers often send multimedia (photos, videos, recordings) of their products and their proceeds when they communicate.   As detailed above, AVALOS has been intercepted speaking over cellular phones with MORALES in discussion about drug trafficking.   The recovery of DEVICES 11 through 13 inside of PREMISES 1, and the circumstances surrounding the search and arrest of AVALOS, leads me to the conclusion that there will be evidence of drug trafficking on the devices.

67.     The **SAFE** was located in a bedroom adjacent to AVALOS' bedroom which was being utilized as a closet, along with the cash counting machine.  In my experience, drug trafficker will often utilize safes to store their drugs and drug proceeds.  Considering that money counter was recovered next to the safe, I believe that these circumstances present probable cause to believe that there will be drug proceeds recovered from inside of the SAFE.  Indeed, the facts of AVALOS' arrest provide insight into how large of an operation he was running—he possessed over 16 pounds of methamphetamine worth over $100,000 on the street.

**Results of Search of PREMISES 4**

68.     During the execution of a federal arrest warrant for BURGOS, law enforcement identified BURGOS' current residence as 356 South 4th Street, Apartment 1, Reading, PA (PREMISES 4).  Prior to entering the apartment, law enforcement heard a number of flushing sounds and then observed BURGOS on the roof of the apartment building near a door leading into Apartment 1.   Soon after, BURGOS came down the stairs leading from the ground floor up to Apartment 1 and surrendered to law enforcement.  After BURGOS' arrest, law enforcement obtained written consent to search the residence from BURGOS' girlfriend, Rosemarie Bonilla.

69.     During the ensuing search of the residence, law enforcement seized, among other items, a large quantity of drug packaging materials, a digital scale, an electric grinder, approximately .0024 grams of heroin, over 100 rounds of ammunition, a pink Apple iPhone, Model A1688, FCC ID: BCG-E2946A, IC: 579C-E2946A (**DEVICE 14**) a black Galaxy Note 3 cellular telephone, IMEI: 357518054681663 (**DEVICE 15**), and a black Alcatel cellular telephone Model 5056N, IMEI: 014650002192587 (**DEVICE 16**).

70.     During the search of the residence, law enforcement searched the area immediately outside the residence in the area of the doorway leading to the rooftop of the

apartment building where law enforcement had observed BURGOS prior to his arrest. From the rooftop over the door leading to Apartment 1, law enforcement seized a plastic rifle box containing a IO Inc. Sporter AK47 carbine, serial number 030373 and two thirty round magazines containing fifty-six live rounds of ammunition.

78.     In addition, law enforcement seized an AT&T ZTE cellular telephone Model Z835, IMEI: 855964037196995, serial number 329F768280B0 (**DEVICE 17)** from the stairwell that BURGOS descended from immediately prior to his arrest.

79.     As detailed previously, I know that drug traffickers will often communicate with each other over cellular phones via voice and text messaging; moreover, drug traffickers often send multimedia (photos, videos, recordings) of their products and their proceeds when they communicate. As detailed above, BURGOS has been intercepted speaking over cellular phones with MORALES in discussion about drug trafficking. The recovery of DEVICES 14 through 17 inside of PREMISES 4, and the circumstances surrounding the search and arrest of BURGOS, leads me to the conclusion that there will be evidence of drug trafficking on the devices.

**Results of Arrest Warrant for DELVALLE**

80.     On September 5, 2019, law enforcement arrested DEVALLE at his residence, 235 Pearl Street, Reading, PA. At the time of his arrest, DEVALLE provided his cellular telephone number as (484) 516-5189, which is the same number on which he was intercepted over TELEPHONE 1 communicating with MORALES. At the time of his arrest, law enforcement seized a gray and black Apple iPhone Model A1522, IMEI: 354451068777876 (**DEVICE 10**). I believe that the contents of DEVICE 10 will have evidence of drug trafficking because DELVALLE was in possession of DEVICE 10 and provided his phone number as the one used when he communicated with MORALES about selling heroin during the course of this

investigation.

81.     On September 5, 2019, law enforcement arrested CEBALLOS at the residence of his girlfriend, Josmarie Garcia, 914 Washington Street, Reading, PA. At the time of his arrest, law enforcement seized a gray and black Apple iPhone Model A1634, FCC ID: BCG-E2944A (**DEVICE 1**). As detailed previously, I know that drug traffickers will often communicate with each other over cellular phones via voice and text messaging; moreover, drug traffickers often send multimedia (photos, videos, recordings) of their products and their proceeds when they communicate. As detailed above, CEBALLOS has been intercepted speaking over cellular phones with MORALES in discussion about drug trafficking. The recovery of DEVICE 1 from CEBALLOS at the time of his arrest leads me to the conclusion that there will be evidence of drug trafficking on it because I know that he has recently used his cellular phone within the last few weeks and months to sell methamphetamine in Reading.

82.     I submit that the information set forth above provides sufficient and justifiable probable cause to search each location for the following reasons:

## VI.     CELLULAR TELEPHONES USED IN FURTHERANCE OF DRUG TRAFFICKING:

83.     Based on my training and experience, I know that individuals involved in drug trafficking often use multiple cellphones, including but not limited to blackberries, smart phones or PDAs to store the telephone numbers for their drug trafficking associates. I am aware that those involved with drug trafficking often keep old cellphones at their residences to allow the individuals to restore contacts into newer cellphones. Based on my training and experience and the training and experience of other agents, I know that individuals involved in drug trafficking often maintain more than one phone or more than one SIM card device, in order to have multiple avenues to facilitate drug trafficking activities, and in an attempt to avoid detection by law

enforcement. I am aware that individuals involved in drug trafficking often times utilize pre-paid cellular telephones which do not maintain specific subscriber information, and/or use phones subscribed to in the name of third person, in order to mask their direct linkage to telephones utilized in furtherance of drug trafficking activities. Further, those involved in drug trafficking often change SIM cards in order to make it difficult for law enforcement to determine their records. Based on my training and experience, as well as the training and experience of other agents, I know that individuals involved in drug trafficking also frequently switch telephone numbers and/or phones. Despite the constant switching of active telephone numbers, drug traffickers often keep old phones.

84.     Based on my training and experience, I know that drug traffickers commonly utilize their cellular telephones to communicate with co-conspirators to facilitate, plan, and execute their drug transactions. For example, I know that drug traffickers often store contacts lists, address books, calendars, photographs, videos, and audio files, text messages, call logs, and voice mails in their electronic devices, such as cellular telephones, to be used in furtherance of their drug trafficking activities.

85.     Specifically, I know that those involved in drug trafficking communicate with associates using cellular telephones to make telephone calls. If they are unable to reach the party called, they frequently leave voice mail messages. I am aware that Apple-based and Android-based phones download voice mail messages and store them on the phone itself so that there is no need for the user to call in to a number at a remote location and listen to the message. In addition, I know those involved in drug trafficking communicate with associates using cellular telephones and tablets to send e-mails and text messages and communicate via social media networking sites. By analyzing call and text communications, I may be able to determine the

identity of co-conspirators and associated telephone numbers, as well as if there were communications between associates during the commission of the crimes.

86.     Furthermore, cellular telephones also contain address books with names, addresses, photographs, and phone numbers of a person's regular contacts.  I am aware that drug traffickers frequently list drug associates in directories, often by nickname, to avoid detection by others.  Such directories as the ones likely contained in the seized cellular telephones, are one of the few ways to verify the numbers (*i.e.*, telephones, pagers, etc.) being used by specific traffickers.

87.     Based on my training and experience and the training and experience of other agents, I know that drug traffickers often use a cellular phone's Internet browser for web browsing activity related to their drug trafficking activities.  Specifically, drug traffickers may use an Internet search engine to explore where banks or mail delivery services are located, or may use the Internet to make reservations for drug-related travel.  In addition, I know that drug traffickers also use their cellular telephone's Internet browser to update their social networking sites in order to communicate with co-conspirators, and to display drugs and drug proceeds or to post photographs of locations where they have traveled in furtherance of their drug trafficking activities.

88.     In addition, drug traffickers sometimes use cellular telephones as navigation devices, obtaining maps and directions to various locations in furtherance of their drug trafficking activities.  These electronic devices may also contain GPS navigation capabilities and related stored information that could identify where these devices were located.

89.     Furthermore, based on my training and experience, forensic evidence recovered from the review of a cellular telephone can also assist in establishing the identity of the user of the device, how the device was used, the purpose of its use, and when it was used.  In particular, I am aware that cellular telephones are all identifiable by unique numbers on each phone, including: serial numbers, international mobile equipment identification numbers (IMEI) and/or electronic serial numbers (ESN).  The search of each phone helps determine the telephone number assigned to each device, thus facilitating the identification of the phone as being used by members of the conspiracy.  In addition, I am aware that by using forensic tools, information/data that users have deleted may still be able to be recovered from the device.

**Technical Terms**

90.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Cellular telephone:   A cellular telephone (or wireless telephone or mobile telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments,

and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Apple Watch is a line of "smart" watches designed, developed, and marketed by Apple Inc. Apple Watch relies on a wireless connection to an iPhone to perform many of its default functions such as calling and texting. However, Wi-Fi chips in all Apple Watch models allow the smartwatch to have limited connectivity features away from the phone anywhere a Wi-Fi network is available.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

f.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

g.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video,

or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

h.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

i.  Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain

programs called apps, which, like programs on a personal computer, perform

different functions and save data associated with those functions. Apps can, for

example, permit accessing the Web, sending and receiving e-mail, and participating

in Internet social networks.

91.     Based on my training, experience, and research, I know that the Devices listed in

Attachment A have capabilities that allow it to serve as a wireless telephone, digital camera,

portable media player, GPS navigation device, and/or PDA. In my training and experience,

examining data stored on devices of this type can uncover, among other things, evidence that

reveals or suggests who possessed or used the device. Additionally, a cellular phone and Apple

Watch may contain call logs, address books, text messages, emails, videos, photographs, or other

stored data relevant to this investigation.

**Electronic Storage and Forensic Analysis**

92.     Based on my knowledge, training, and experience, I know that electronic devices

can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device. This information can sometimes

be recovered with forensics tools.

93.     Forensic evidence: As further described in Attachment B, this application seeks

permission to locate not only electronically stored information that might serve as direct evidence

of the crimes described on the warrant, but also forensic evidence that establishes how the Device

was used, the purpose of its use, who used it, and when. There is probable cause to believe that

this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

94. Nature of examination: Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

96. Based on the information detailed above, I believe the DEVICES and the SAFE were used in furtherance of a drug trafficking operation. Considering that every transaction listed above involved the pre-arranging via telephone call or text message, and the fact that the TARGET SUBJECTS were arrested in possession of multiple devices capable of transmitting communications (i.e. cellular phones, laptop computers, and an Apple Watch), there is sufficient

probable cause for issuance of a warrant with respect to those devices because they contain

evidence of drug trafficking and conspiracy to engage in the drug trafficking which was the basis

of the arrests on September 5, 2019, and within the scope of the investigation outlines above.  In

addition, the DEVICES (cellular phones) may contain other information to include text

messages, call logs, photographs, or other data directly related to the drug and firearm

transactions.  Based upon the foregoing, I submit there is probable cause to search the

**DEVICES** and **SAFE**, as more fully described in Attachment A.I. and A.II. to this warrant

application for the items listed on Attachment B.I. and B.II., which constitute evidence of the

commission of the Target Offenses.

**I swear under oath that the above is true and correct to the best of my knowledge
and belief.**

Ann M. Kirkland, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this
24th day of September 2019.

HON. JACOP P. HART
U.S. MAGISTRATE JUDGE

## ATTACHMENT A.I.

### ITEMS TO BE SEARCHED

The property to be searched are cellular telephones and one "smart watch" ("DEVICES") that are listed below. The following devices are currently located with the FBI in Philadelphia, PA:

1. **DEVICE 1** - One gray and black Apple iPhone Model A1634, FCC ID: BCG-E2944A, seized from the person of CEBALLOS, at the time of his arrest;

2. **DEVICE 2** - One tan Apple iPhone, with no further identifying information, seized from the bedroom of Luis Gomez ("L.GOMEZ") at the residence of CEBALLOS, 402 Spring Valley Road, Reading, PA, ("PREMISES 1");

3. **DEVICE 3** - One Mac book laptop computer, serial number: C02GHRQ6DV13, seized from L.GOMEZ' bedroom at PREMISES 1;

4. **DEVICE 4** - One black and blue cellular telephone Model QS5509A, IMEI: 357485092790080, seized from common area in PREMISES 1;

5. **DEVICE 5** - White Apple iPhone, with no further identifying information, seized from the common area in PREMISES 1;

6. **DEVICE 6** - One gray Apple iPhone Model A1586, IMEI: 353026095897953, seized from the common area in PREMISES 1;

7. **DEVICE 7** - One black Samsung flip phone Model SGH-T309, serial number: RV3YB17687H, IMEI: 357835001165222; seized from the common area in PREMISES 1;

8. **DEVICE 8** - One black Apple iPhone, with no further identifying information, seized from the bedroom of Jose Gomez ("J.Gomez") in PREMISES 1;

9. **DEVICE 9** - One Lenovo laptop computer, serial number YD02LAU4, seized from J.Gomez's bedroom in PREMISES 1; and

10. **DEVICE 10** - One gray and black Apple iPhone Model A1522, IMEI: 354451068777876, seized from the person of DEVALLE, at the time of his arrest;

11. **DEVICE 11** - One black LG AT&T cellphone, IMEI: 355437101885775, serial number: 90VTHJ188577, seized from the master bedroom of AVALOS, 820 Master Street, Reading, PA, ("PREMISES 2").

**12. DEVICE 12** - One Apple iPhone, rose gold color with gray case and no further identifying numbers, seized from the master bedroom of AVALOS, PREMISES 2;

13. **DEVICE 13** - One Apple watch, 4 series, seized from master bedroom of AVALOS, PREMISES 2;

14. **DEVICE 14** - One pink Apple iPhone, Model A1688, FCC ID: BCG-E2946A, IC: 579C-E2946A seized during consent search of the residence of BURGOS, 356 South 4th Street, Apartment 1, Reading, PA, ("PREMISES 4"),

15. **DEVICE 15** - One black Galaxy Note 3 cellular telephone, IMEI: 357518054681663, seized from PREMISES 4;

16. **DEVICE 16** - One black Alcatel cellular telephone Model 5056N, IMEI: 014650002192587, seized from PREMISES 4;

17. **DEVICE 17** - One AT&T ZTE cellular telephone Model Z835, IMEI: 855964037196995, serial number 329F768280B0, recovered from stairwell leading to PREMISES 4.

This warrant authorizes the forensic examination of the DEVICES for the purpose of

identifying the electronically stored information described in Attachment B.I.

## **ATTACHMENT A.II.**

## **ITEM TO BE SEARCHED**

The property to be searched is one locked Sentry safe ("SAFE") seized from 820 Master Street, Reading, PA.  The SAFE is located at an FBI facility in Allentown, Pennsylvania.  This warrant authorizes a search of the SAFE for the items described in Attachment B.II.

## ATTACHMENT B.I.

All records on the DEVICES described in Attachment A.I. that relate to drug trafficking in violation of Title 21, United States Code, Section 841(a) involving the TARGET SUBJECTS, including information pertaining to the following matters:

(a) The distribution of illegal drugs;

(b) The types, amounts, and prices of illegal drugs distributed as well as dates, places, and amounts of specific transactions;

(c) The identity of the persons who sent to and/or received communications from the cellular telephone about matters relating to the distribution of illegal drugs, including records that help reveal their whereabouts;

(d) The storage ("stash") locations of illegal drugs;

(e) The sources of supply for the illegal drugs and the list of customers, including names, addresses, phone numbers, and any other identifying information;

(f) The transporting or movement of illegal drugs, including information related to the methods of trafficking and travel schedules;

(g) Evidence indicating how and when the cellular telephone was used to determine the chronological context of cellular telephone use, account access, and events relating to distribution of illegal drugs;

(h) Evidence indicating the geographic location of the cellular telephone at times relevant to the investigation;

(i) Evidence of user attribution showing who used or owned the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

(j) Contents of telephone directories; electronic libraries; stored communications including voice mail, voice messages and text messages, contact lists, applications, reference material aiding in the furtherance of criminal activity; photographs; time and date stamps; Global Positioning System (GPS) data; stored internet searches;

(k) Any information recording the TARGET SUBJECTS' schedule or travel between 2018 and 2019; and

(l) Any other memory feature relating to the offenses outlined in the affidavit of probable cause.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## ATTACHMENT B.II.

## ITEM TO BE SEARCHED

The following are items to be seized from the SAFE:

1.  Controlled substances, such as methamphetamine, cocaine, heroin, marijuana, opioid pills, and items used in the processing, packaging, and distribution of controlled substances including grinders, scales, ink pads, stamps, razor blades, mirrors, vials, kilo presses, vacuum sealers, plastic wrap for vacuum sealers, freezer bags, plastic baggies, paper bindles, balloons, wrapping paper, cellophane, and film canisters, and cutting agents and diluent;

2.  Books, records (in whatever form, including electronic/digital form), invoices, receipts, records of real estate transactions, general ledgers, bank statements and related records, cancelled checks, deposit slips, withdrawal slips, passbooks, money drafts, letters of credit, money orders, bank money wrappers, money counting machines, tax records, United States currency, records regarding the existence of safe deposit boxes, safe deposit keys, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

3.  Address and/or telephone books, rolodex indices, any papers or electronic records, reflecting names, addresses, telephone numbers, pager numbers, e-mail addresses, and/or fax numbers of co-conspirators, financial institutions, and other individuals or businesses with whom a financial or business relationship exists;

4.  Indices of occupancy, residency, rental and/or ownership of the premises to be searched including utility and telephone bills, cancelled envelopes, rental, purchase or lease agreements, and keys;

5.  Books, records, receipts, notes, ledgers, "owe sheets," tally sheets, and other papers or electronic records relating to the transportation, ordering, purchase and distribution of controlled substances;

6.  Papers, tickets, notes, receipts, and other items, including electronic records, relating to domestic and international travel;

7.  Cell phones and components of cell phones (e.g. SIM cards);

8.  Photographs, videos in hard copy or digital/electronic format;

9.  Firearms, ammunition, firearms paraphernalia, such as holsters, purchase boxes, ballistic vests, and any records or receipts pertaining to firearms and ammunition; and

10.     United States currency, monies, financial instruments, precious metals and gemstones, jewelry, vehicles and other items of value, automobile and real estate titles, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from drug trafficking activities.

11.     Computers, cellular telephones, and other electronic equipment, such as telex machines, facsimile machines, currency counting machines, telephone answering machines, and pagers; computer components, computer peripherals, word processing equipment modem, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives and other computer-related electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data, operating systems, application software, utility programs, compilers, interpreters, and other programs or software suited to communicate with computer or hardware or peripherals either directly or indirectly via telephone lines, radio or other means of transmission.